# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

JENNIE W. THOMPSON AND ANOTHER, EXECUTORS, ETC., OF
JOHN B. THOMPSON, DECEASED, PLAINTIFFS, *v.* THE
SAINT NICHOLAS NATIONAL BANK, DEFENDANT.

*United States Revised Statutes, § 5208 — a violation of its provisions by a national
bank in overcertifying checks, does not preclude the bank from enforcing its claim
out of collaterals pledged to secure the obligations of the drawer of the check.*

MOTION by the plaintiffs for a new trial upon exceptions ordered
to be heard in the first instance at the General Term.

The action was brought to recover the possession of seventy-three
mortgage bonds of the Jefferson, Madison and Indianapolis Railroad
Company of the denomination of $1,000 each, and twenty mortgage
bonds of the like denomination of the Indianapolis, Bloomington and
Western Railroad Company. These bonds belonged to and were the
property of John B. Thompson, the plaintiffs' testator, in April, 1874.
At that time he was dealing in stocks through Capron & Merriam,
stock brokers, in the city of New York. They had purchased stocks
for him under his authority and in the course of their business, and they
called upon him to furnish them with margins to enable them to have
the stocks, purchased or to be purchased, held and carried by them.
These bonds were all transferred to the brokers and receipts taken
for them, stating that they were to be held as margin on his indi-
vidual stock transactions. The bonds were payable to bearer and
in the usual form of railway securities.

These brokers were customers of the St. Nicholas National Bank,
making deposits and obtaining money from that institution, and
they delivered all the bonds to the bank to be held by it for the
loans and indebtedness of the brokers. They failed on Monday, the
20th of April, 1874, and the plaintiffs' testator was soon afterwards
informed that these bonds had been passed into the possession of the
bank. He demanded their possession from the bank but their delivery

to him was refusd, and he commenced this action on the 18th of April, 1880, six years after the delivery of the bonds to the bank. Before the bonds were transferred and delivered to the bank and in December, 1873, the brokers made the following agreement with the bank:

### AGREEMENT, DATED THE 2D DAY OF DECEMBER, 1873.

We hereby agree with the St. Nicholas National Bank of New York, in the city of New York, that in case we shall become or be at any time indebted to said bank for money lent or paid to us, or for our account or use, or for any overdraft, in any sum or amount then due and payable, the said bank may, in its discretion, sell at the brokers' board, or at public auction or private sale, without advertising the same, and without notice to us, all, any and every collateral securities, things in action and property held by said bank for securing the payment of such debt, and apply the proceeds to the payment of such indebtedness, the interest thereon and the expenses of the sale, holding ourselves responsible and liable for the payment of any deficiency that shall remain unpaid after such application.

CAPRON & MERRIAM.

And under its authority the bonds were sold by the bank to pay the deficiency in the account of the brokers with it.

The court at General Term said: " The brokers were not, in fact, authorized to use the testator's bonds in this manner; but by this evidence the bank proved the fact to be that it had received the bonds in the usual course of business, and for value, afterwards advanced upon their faith and security. And that was all that was required to satisfy the rule so elaborately discussed by the counsel for the plaintiffs and stated in the opinion in *Davis Sewing Machine Company* v. *Best* (105 N. Y., 59, 64).

" The burden was upon the defendant to prove that the bonds had been received by it in good faith; and that it had parted with value for them, entitling it so far to be protected as a *bona fide* holder; and its proof exhibited that to be the truth of the case. But the main reliance of the plaintiffs for the support of their action has been placed upon section 5208 of the Revised Statutes of the United States. By this section it has been provided that: ' It shall be unlawful for any officer, clerk or agent of any national

banking association to certify any check drawn upon the association unless the person or company drawing the check has on deposit with the association, at the time such check is certified, an amount of money equal to the amount specified in such check.   Any check so certified by duly authorized officers shall be a good and valid obligation against the association ; but the act of any officer, clerk or agent of any association, in violation of this section, shall subject such bank to the liabilities and proceedings on the part of the comptroller as provided for in section fifty-two hundred and thirty-four.'

" Under this enactment it is insisted on behalf of the plaintiffs that the bank was incapable of taking or receiving these bonds by way of security for its own certified checks.  And that so far as they were sold to pay the indebtedness of Capron & Merriam on such checks, the sale was illegal and the plaintiffs were entitled to recover.   But while the statute has forbidden the officers, clerks or agents of National banking associations from certifying checks unless the person or company drawing the check has on deposit with the association, at the time that such check is certified, an amount of money equal to the amount specified in such check, it has not declared the check so certified to be inoperative or unlawful against the bank itself.   But it has provided, on the contrary, that the check or checks so certified shall be good and valid obligations against the association, and the only effect declared to result from the act of certification is, that the association shall be liable to proceedings on the part of the comptroller for its dissolution.   If it had provided that the check certified without an equal amount of money being on deposit in the bank, should be void, or if it had not provided that such check or checks should be a valid obligation against the association, there would be ground for the position taken in behalf of the plaintiffs.   For an obligation made in violation of a statutory provision forbidding it, is under ordinary circumstances inoperative and void.   But this section of the statute was not enacted in such a manner as to allow so extensive an application of its provisions.   The principle upon which that application depends was rejected by the law making authority.   And notwithstanding the fact that the certification of the checks was forbidden, as Capron & Merriam did not have the amount of money on deposit

with the bank to justify the certification, the law still declared the checks so certified to be good and valid obligations against the association. And assuming them to be so, as that must be done under this provision of the statute, the association was vested with the resulting or incidental right to accept and receive securities which would indemnify and protect it against liability upon these good and valid obligations. This right necessarily results from the fact that by the certifications the bank became legally liable to pay the amounts for which the checks were certified. And being legally liable to that extent, no provision of law has forbidden it to protect itself against such liability by accepting and receiving securities which would be valid in its possession, against any other legal obli gation assumed for the benefit of the person or persons delivering to it such securities. No authority has been cited or found going so far as to throw the least qualification of this legal principle, resulting as it does from the language of this enactment. But so far as authorities have been cited arising under the National banking law, they support the inability of the plaintiff to maintain his right to recover the bonds under this section of the banking law. In the case of *National Bank of Genesee* v. *Bostwick* (71 N. Y., 161) the mortgage, whose validity was passed upon and condemned by the court, was given in violation of a prohibition contained in the National Banking Law which was subjected to no such qualification as this prohibition has been, concerning the certification of checks. And the decision in that case proceeded further than the Supreme Court of the United States was willing to extend the prohibition of the law. For in the same case under the name of *National Bank* v. *Whitney* (103 U. S., 99), it was held by that court, reversing this decision of the Court of Appeals, that the United States was the only party that could take advantage of this violation of the statute, and that the mortgage itself was capable of being enforced against the surplus in favor of the party holding and insisting upon it. And this was again followed and sanctioned in *Fortier* v. *New Orleans National Bank* (112 U. S., 439, 451). A further ruling, important in its effect upon the present controversy, was made in *National Bank* v. *Stewart* (107 U. S., 676), where it was held, although the statute prohibited loans by national banks on the security of the shares of their own capital stock, that the trans-

action could not be questioned by a party to it, after the shares themselves had been sold and their proceeds applied, as the bonds and their proceeds have in this case, to the extinguishment of the indebtedness. In all these authorities the principle or policy embodied in this section of the statute has been followed, that the transaction can only be regularly questioned by the authorities of the United States in a proceeding against the association for its violation of the statute. This principle although supported by the general policy of the law, was not so directly applicable in the other cases as it is in this, for here it has been incorporated into and made a part of the section itself. And it is the only legal consequence or result which the law has declared shall follow from the certification of the checks, where the drawer has not on deposit with the association at the time, an amount of money equal to the amount specified in the certified checks. The court was therefore right in holding at the trial that the bank became a holder for value of the bonds in controversy by certifying these checks for Capron & Merriam, from whom the bonds for this object had been previously received.

*Lewis Sanders*, for the plaintiffs.

*William Allen Butler*, for the defendant.

Opinion by DANIELS, J.; VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment directed for defendant on verdict, with costs.